IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LINDA M. PAXSON, O/B/O DANIEL PAXSON, DECEASED, | § § § | |
| *Plaintiff,* | § § § | |
| v. | § | CIVIL ACTION NO.: 4:17-CV-0632 |
| NANCY A. BERRYHILL, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| *Defendant.* | § § | |

## MEMORANDUM AND ORDER

Plaintiff Linda M. Paxson, on behalf of Daniel C. Paxson, deceased, filed this case under the Social Security Act, 42 U.S.C. §§ 405(g) for review of the Commissioner's final decision denying his request for social security disability insurance benefits. Linda Paxson and the Commissioner filed cross-motions for summary judgment (Dkts. 8, 10). After considering the pleadings, the record, and the applicable law, the court **GRANTS** Linda Paxson's motion, **DENIES** the Commissioner's motion, and remands this case to the Commissioner.[1]

### I. Background

**1. Factual and Administrative History**

Daniel C. Paxson (Paxson)[2] filed a claim for social security disability insurance benefits and supplemental security income benefits on July 28, 2012. He alleged the onset of disability as of October 2, 2009 due to pancreatitis. Dkt. 4-8 at 12. His claim was denied on initial review and

---

[1] The parties have consented to the jurisdiction of this magistrate judge for all purposes, including entry of final judgment. Dkt. 12.
[2] "Paxson" refers to Daniel. Where necessary, the court will refer specifically to Linda Paxson.

reconsideration. The administrative law judge (ALJ) held a hearing on September 24, 2013 at which Paxson, Linda Paxson, and a vocational expert testified. The ALJ issued an unfavorable decision on January 21, 2014.[3]

Paxson requested review of the ALJ's unfavorable decision by the Appeals Council and submitted "new and material evidence consisting of a psychological report from Jim Whitley Ed.D., dated February 19, 2014." Dkt. 4-5 at 24. The Appeals Council determined "[t]he record does not contain medical evidence dated later than June 26, 2013. Dr. Whitley's report suggests severe deterioration after that date. Further evaluation of claimant's impairments is necessary." *Id.* The Appeals Council directed the ALJ to consider the new evidence from Dr. Whitley, "further develop the record to obtain additional evidence concerning the deterioration of the claimant's condition with appropriate dates," and "if warranted by the expanded record, obtain supplemental evidence from a vocational expert." Dkt. 4-5 at 25.

Paxson passed away on April 7, 2014. A second hearing before the ALJ, at which Linda Paxson and a vocational expert testified, was held on January 15, 2015. The ALJ issued a second unfavorable decision on May 19, 2015.[4] The Appeals Council denied review on December 29, 2016, and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(b)(2) and 416.1484(b)(2).

## 2. Standard for District Court Review of the Commissioner's Decision

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the

---

[3] Paxson raised the issue of memory loss before the September 24, 2013 hearing and requested neurophysical testing. The ALJ denied the request based on his finding that "there is adequate evidence in the record to assess and determine the claimant's neurological and psychiatric status." Dkt. 4-5 at 9.

[4] The same ALJ, Judge Allen Erickson, presided over both hearings and issued both unfavorable decisions in this case.

2

Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[5] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 Fed. App'x 233, 236 (5th Cir. 2015).

---

[5] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

3

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c). The Fifth Circuit construes these regulations as setting forth the following standard: "an impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the

4

listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; *see also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id.* Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### 4. The ALJ's Decision

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Paxson met the insured status requirements of the Social Security Act through December 31, 2014, and

did not engage in substantial gainful activity from October 2, 2009, his alleged onset date, through the date of his death, April 7, 2014. The ALJ found that Paxson had the severe impairments of alcohol abuse with alcoholic dementia and liver disease, as well as numerous non-severe impairments. *See* Dkt. 4-3 at 20 (listing non-severe impairments). The ALJ analyzed Paxson's severe impairment of alcohol abuse with alcoholic dementia under the "special technique" for mental impairments, 20 C.F.R. 1520a(d)(2).

The ALJ made separate findings and conclusions with respect to the periods before and after February 19, 2014.[6] The ALJ found that prior to February 19, 2014, Paxson's impairments did not meet or equal the severity of a listed impairment in Appendix 1. Dkt. 4-3 at 22. Prior to February 19, 2014, according to the ALJ's findings, Paxson had the residual functional capacity "to perform a full range of work at all exertional levels but with the following non-exertional limitations: he required a work environment with ready access to bathroom facilities, that was not a fast-paced production-type environment, and where he was exposed to few work-place changes. He could understand, remember, and carry out short, simple instructions, perform routine tasks, and make simple decisions." Dkt. 4-3 at 23. Based on the testimony of a vocational expert, the ALJ found that prior to February 19, 2014 Paxson could not perform his past relevant work as a master electrician, but considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that claimant could have performed and therefore he was not disabled prior to February 19, 2014. Dkt. 4-3 at 26-27.

With respect to the period after February 19, 2014, the ALJ found that Paxson's impairments met the requirements of listings 12.02 (Organic Mental Disorders) and 12.09 (Substance Addiction Disorders) and therefore he was disabled. Dkt. 4-3 at 27. However, the ALJ found that if Paxson had stopped abusing alcohol after February 19, 2014, he would have

---

[6] February 19, 2014 is the date the ALJ inferred as the onset of Paxson's alcoholic dementia.

continued to have severe impairments, but those impairments would not have met or equaled the criteria of the listed impairments in 12.02 or 12.09. Dkt. 4-3 at 29. The ALJ also found that if Paxson had stopped abusing alcohol after February 19, 2014, his RFC would have remained at the pre-February 19, 2014 level. Dkt. 4-3 at 30. Thus, the ALJ concluded that after February 19, 2014, Paxson's substance abuse disorder was a "contributing factor material to the determination of disability" and thus, Paxson was not disabled under the Act at any time from his alleged onset date through the date of his death. Dkt. 4-3 at 29-32.

## II. Analysis

Paxson argues that the ALJ committed reversible error in two ways: (1) he inferred the onset date of Paxson's alcoholic dementia without the assistance of a medical advisor; and (2) he failed to advise Paxson that he would bear the burden of proof to demonstrate that alcohol abuse was not a contributing factor material to the determination of disability.

### 1. The need for a medical advisor.

Paxson contends the ALJ erred by inferring the onset date for his dementia as February 19, 2014 without consulting a medical advisor as required by SSR 83-20, 1983 WL 31249 (1983). "SSR 83-20 prescribes the policy and procedure by which the Secretary should determine the onset date of a disability." *Spellman v. Shalala*, 1 F.3d 357, 361 (1993). Relevant factors in the determination of disability onset are the claimant's allegation of onset, work history, and the medical evidence; but the medical evidence is primary. *Id.* "SSR 83-20 recognizes that with slowly progressive impairments, including mental impairments, 'it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling.'" *Id.* (quoting SSR 83-20). Thus, the Fifth Circuit held in *Spellman* that "in cases involving slowly progressive impairments, when the medical evidence regarding the onset

7

date of a disability is ambiguous and the Secretary must infer the onset date, SSR 83-20 requires that that inference be based on an informed judgment. The Secretary cannot make such an inference without the assistance of a medical advisor." *Id.* at 362.

Here, the ALJ's determination of February 19, 2014 as the date of onset clearly derives from the date of Dr. Whitley's formal cognitive functioning assessment. The ALJ chose the February 19, 2014 onset date precisely because "there simply is no confirmatory evidence of such severe limitations prior to that time." *Id.* Prior to February 19, 2014, "no treating physician [] expressed an opinion regarding the limitations imposed by the claimant's impairments on his ability to perform work-related activities." Dkt. 4-3 at 25.[7]

In this case, like *Spellman*, the ALJ inferred an onset date based on the date of diagnosis of the mental impairment and without consulting a medical advisor. Inferring an onset date based on the date of first diagnosis and without consulting a medical advisor fails to comply with the requirements of SSR 83-20. *See Swanson v. Secretary of Health & Human Services*, 763 F.2d 1061,1065 (9th Cir. 1985) ("The critical date is the date of *onset* of disability, *not* the date of diagnosis." (emphasis in original)); *see also Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987) (SSR 83-20 does not permit an ALJ to rely on the date of first diagnosis solely because no earlier diagnosis date was available). In *Spellman*, the Appeals Council did not consult a medical advisor before inferring a disability onset date of approximately six months prior to the first mental examination that diagnosed a severe mental impairment. None of Spellman's medical evidence demonstrated a severe mental impairment prior to the date of her first mental status evaluation, *see* 1 F.3d at 361, just as Paxson's medical evidence does not demonstrate disabling alcoholic dementia prior to February 19, 2014. However, Spellman's mental impairment, like

---

[7] To be clear, there are no medical records, much less records indicating when Paxson's dementia became disabling, for the period between June 2013 and February 19, 2014.

8

Paxson's alcoholic dementia, was a slowly progressive impairment.[8] In *Spellman*, the Fifth Circuit reversed and remanded the case, concluding that "because Spellman's mental impairment was of a slowly progressive nature, and the medical evidence was ambiguous with regard to the disability onset date, the Appeals Council could not have inferred an onset date based on an informed judgment of the facts without consulting a medical advisor." *Id.* at 363.

The Commissioner cites *Aguilar v. Astrue* as factually analogous to this case, but in *Aguilar*, the "Plaintiff's testimony, his medical records, the opinions of consultative doctors and a VE," established the onset date of his slowly progressive impairment and the ALJ relied on that information in determining the plaintiff was not disabled. *See Aguilar v. Astrue*, Civil Action No. 2:13-cv-00017, 2014 WL 5500689 *9 (S.D. Tex. Oct. 29, 2014). Unlike *Aguilar*, the record here is ambiguous as to exact date on which Paxson's limitations from alcoholic dementia first became disabling. As the Appeals Council stated in the remand order: "Dr. Whitley's report suggests severe deterioration" after June 26, 2013. Dkt. 4-5 at 24. It is true that Paxson did not seek treatment for cognitive or mental health issues until February 21, 2014,[9] and he continued to drive on occasion, but there is not enough evidence in the record for the ALJ to make an informed judgment as to the precise onset date of Paxson's disability without the assistance of a medical advisor. Thus, ALJ erred by not consulting a medical advisor as required by SSR 83-20.

The Commissioner contends that any error in this regard is harmless, yet the Social Security Administration recognizes that determination of onset date is crucial and when ambiguous, a medical advisor must be consulted. *See* SSR 83-20, 1983 WL 31249 at *1, 3. This

---

[8] The Commissioner does not dispute that Paxson's dementia was a slowly progressive impairment. The Commissioner implicitly acknowledges the slowly progressive nature of Paxson's impairment in arguing that the ALJ followed SSR 83-20's directives for cases involving such disabilities, and in arguing that the "medical evidence . . . demonstrates when Claimant's condition had deteriorated to the point where he met a listed impairment." Dkt. 13 at 2, 4. *See also Hadley v. Bowen*, No. 88-C-5773, 1989 WL 18313 *2 (N.D. Ill. Feb. 27, 1989) (medical opinion evidence showed that "mental deterioration from alcohol abuse is slow and cumulative").

[9] The ALJ denied Paxson's request for neurological testing prior to the September 24, 2013 hearing. Dkt. 4-5 at 9.

9

court cannot say the error was harmless because the ALJ's ultimate conclusion of no disability involves or includes his finding that February 19, 2014 was the date of Paxon's onset of disability. For example, the ALJ found that as of February 19, 2014 the severity of Paxson's impairments of alcohol abuse and alcoholic dementia met the requirements of listings 12.02 and 12.09, Dkt. 4-3 at 27, but at the same time, found that Paxson would *not* have had an impairment that met or medically equaled met the listing criteria in 12.02 or 12.09 if he had stopped abusing alcohol after February 19, 2014. Dkt. 4-3 at 29 ("If the claimant had stopped the substance abuse, the severity of the remaining limitations would not have met or medically equaled the criteria of listings 12.02 or 12.09 . . ."). The ALJ's finding that Paxson would have had only "moderate restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration persistence and pace," *id.*, appear to be based at least in part on the medical records from the January 2013 visit with Dr. Fee at which Paxson displayed only some memory limitations. *See* Dkt. 4-14 at 112-17. Yet, if a medical advisor were to suggest or determine that Paxson's onset of disability was not February 19, 2014, but was some earlier date, that determination might affect the ALJ's evaluation of the extent to which Paxson's "mental and physical limitations would remain if the claimant stopped the substance use," which in turn might impact the finding of no disability. In other words, the ALJ's determination that alcoholism is a contributing factor material to the determination of Paxson's disability could be affected by the date of onset and information from the medical advisor regarding the progressive nature of alcoholic dementia. Thus, the court is not persuaded that Paxson was not prejudiced by the error,[10] and remand is appropriate.

---

[10] *See Jones v. Astrue*, 691 F.3d 730, 734-35 (the party seeking remand must show that prejudice resulted from an error).

## 2. Plaintiff's burden re: substance abuse disorder

Because the court is remanding this case for reconsideration of the onset date of Paxson's disability, and thus necessarily for reconsideration of whether alcoholism was a contributing factor material to the determination of disability, it is not necessary for the court to decide whether the ALJ erred in failing to give Paxson notice of his burden of proof. *See Coyle v. Colvin*, Civil Action No. 4:13-CV-00621, 2014 WL 12531206 *15 (S.D. Tex. 2014) ("since remand is required on this issue, the court does not consider Plaintiff's other issues for review"). The court notes however that it is well established at this point, almost 20 years after *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999), that a claimant bears the burden of proving that alcohol or drug addiction is *not* a contributing factor material to his disability. Paxson will bear that burden on remand.[11]

## III. Conclusion

The court concludes that the ALJ erred as a matter of law by not consulting a medical advisor when determining the onset date of Paxson's disability. Therefore, Paxson's motion is granted, and the Commissioner's motion is denied. The Commissioner's decision denying benefits is reversed, and this case is remanded for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

---

[11] Under regulations implementing § 132c(a)(3)(J), if an ALJ finds the claimant disabled, and there is medical evidence of alcoholism, then the ALJ must determine whether the alcoholism is a contributing factor material to the determination of disability. *Snodgrass v. Colvin*, Civil Action No. 11-cv-0219, 2013 WL 4223640 * 2 (N.D. Tex. Aug. 13, 2013) (citing 20 C.F.R. § 1535(a) and 20 C.F.R. § 935(a)). In doing so, the ALJ evaluates the limitations on which he based the disability determination, decides whether any limitations would remain if the claimant stopped using alcohol, and then decides if the remaining limitations would still be disabling. *Id.* (citing 20 C.F.R. § 1535(b) and 20 C.F.R. § 935(b)). "[C]laimants who are addicted to drugs or alcohol 'must introduce evidence that supports a finding' that they would be disabled even upon stopping their drug and alcohol use. After the claimant has introduced such evidence, the ALJ 'must identify at least *some* medical evidence supporting the conclusion that [the] claimant no longer would be disabled if he or she stopped drinking or taking drugs." *Id.* at *2-3 (emphasis in original, citations omitted). Here, Paxson has pointed to the report of Dr. Whitley and the DSM IV (Diagnostic Statistical Manual for Mental Disorders) in arguing that Paxson's functional deficits were permanent. The ALJ gave great weight to Dr. Whitley's findings as to Paxson's limitations, but apparently not as to his prognosis. The court makes no ruling as to whether the ALJ's decision that alcohol was a contributing factor material to disability is supported by substantial evidence.

11

Signed at Houston, Texas, on March 8, 2018.

Christina A. Bryan
United States Magistrate Judge